1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| RUTH GONZALEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No.   1:18-cv-01001-JDP<br><br>ORDER TO ASSIGN THIS CASE TO A<br>DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS<br>THAT PLAINTIFF'S SOCIAL SECURITY<br>APPEAL BE DENIED AND THAT<br>JUDGMENT BE ENTERED IN FAVOR OF<br>DEFENDANT<br><br>ECF No. 1 |

        Ruth Gonzalez ("claimant"), proceeding without counsel, challenges the final decision of

the Commissioner of Social Security ("Commissioner") denying her application for supplemental

security income.  ECF No. 1.  For the reasons stated in this order, I recommend affirming the

administrative decision of the Commissioner.

**I.      STANDARD OF REVIEW**

        My review is limited:  On appeal, I ask only whether substantial evidence supports the

Commissioner's factual findings and whether the Commissioner applied the correct legal

standards.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla of evidence but less

than a preponderance.  *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  I will uphold

the ALJ's decision if it is rational, even if there is another rational interpretation of the evidence,

because I may not substitute my judgment for that of the Commissioner.  *Id.*  I review only the

1   reasons provided by the Commissioner in the disability determination and may not affirm based

2   on a ground upon which the Commissioner did not rely.  *See Revels*, 874 F.3d at 654.

3   **II.    ANALYSIS**

4        The ALJ determines eligibility for Social Security benefits in a five-step sequential

5   evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity;

6   (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies

7   as severe; (3) whether any of claimant's impairments meet or exceed the severity of one of the

8   impairments listed in the regulations; (4) whether the claimant can perform her past relevant

9   work; and (5) whether the claimant can perform other specified types of work.  *See Barnes v.*

10   *Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920.  The burden of proof is on

11   the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth

12   step.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

13        At step one, the ALJ found that claimant had not engaged in substantial gainful activity

14   since September 4, 2014.  AR 13.  At step two, the ALJ found that claimant had the severe

15   impairments of status-post fracture of right tibia/fibula with right ankle pain and obesity.  AR 13.

16   At step three, the ALJ found that claimant did not have an impairment or combination of

17   impairments that met or exceeded the severity of the listed impairments.  AR 14-15.  Before

18   proceeding to step four, the ALJ found that claimant had the residual functional capacity ("RFC")

19   to perform light work, with some limitations.  AR 15-17.  At step four, the ALJ found that

20   claimant could not perform past relevant work.  AR 17-18.  At step five, the ALJ found that

21   considering claimant's age, education, work experience, and residual functional capacity, there

22   are jobs existing in significant numbers in the national economy that the claimant can perform.

23   AR 18-19.

24        In her amended motion for summary judgment, ECF No. 18, claimant lists 12 arguments

25   that can be fairly consolidated into four categories: (1) the ALJ's finding regarding her severe

26   impairments was incomplete and contrary to the weight of the medical evidence, ECF No. 18 at

27   ¶¶ 1, 2, 3, 9; (2) claimant's impairments should have met the severity of a listed impairment, ECF

28   No. 18 at ¶ 2; (3) because the ALJ did not consider all of her severe impairments, the RFC to

perform light work is not supported by the record, ECF No. 18 at ¶¶ 4, 5, 7, 8, 10, 12; and (4) the questions posed to the vocational expert ("VE") did not fairly or accurately describe all of claimant's symptoms and limitations, ECF No. 18 at ¶¶ 6, 11.  I consider each in turn.

### A. Severe Impairments

Claimant argues that the ALJ should have found the additional severe impairments of arthritis and cellulitis at step two.[1]  The step two inquiry is a "screening device to dispose of groundless claims."  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (internal citations and quotation marks omitted).  The ALJ carefully considered the evidence of claimant's impairments at step two.  AR 13.  Specifically, the ALJ found that "there is no support in the clinical or diagnostic record for the diagnosis of arthritis in multiple joints."  AR 13.  There is also no laboratory testing, x-rays, prescription medication, or evaluation by a specialist to support a diagnosis of arthritis.  AR 13.  Claimant has had two diagnoses of cellulitis of the foot and lower right extremity, but each time the issues were addressed with antibiotics and fully resolved.  AR 13.  Thus, the ALJ's determination that claimant's arthritis and cellulitis impairments were non-severe was supported by substantial evidence.

Furthermore, when an ALJ finds at least one severe impairment and proceeds with the evaluation, there is no reversible error for a failure to find additional severe impairments at step two.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  In *Lewis*, the ALJ did not count claimant's bursitis as a severe impairment at step two but considered the limitations imposed by bursitis at step four.  *Id.*  The court found this analysis to be sufficient under the substantial evidence standard and stated that if there were any error, it would be harmless.  *Id.*  Similarly, in this case, the ALJ found the severe impairments of status-post fracture of right tibia/figula with right ankle pain and obesity at step two and considered all of claimant's impairments, whether severe or non-severe, when evaluating claimant's RFC before arriving at step four.  AR 15-17.  Thus, the categorization of claimant's arthritis and cellulitis as non-severe impairments at step

---

[1] Claimant also appears to argue that her obesity and fracture should have been considered severe, but the ALJ identified those impairments as severe at step two.

two is inconsequential because the ALJ considered the limiting effects of these impairments in determining claimant's RFC.  Any error by the ALJ at step two is therefore harmless.

**B.  Listings**

The Social Security Regulations' "Listing of Impairments" identifies impairments to fifteen categories of body systems that are considered severe enough to preclude employment. *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are automatically disabling if the requirements of that listing are met.  *See* 20 C.F.R. § 404.1520(d).  Thus, if a claimant meets the criteria for a listing, the ALJ need not determine claimant's RFC and does not proceed to steps four and five.  *See id.*

Claimant does not specify why she believes any of her impairments meet a listing or which listing that might be.  The ALJ evaluated whether her ability to ambulate effectively met Listing 1.02A and whether her obesity combined with her severe musculoskeletal impairment met Listing 1.00Q.  AR 14-15.  Listing 1.02A is for major dysfunction of joint(s) "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.  Additionally, the ankle must be dysfunctional to the point that claimant is not able "to ambulate effectively."  *Id.*  The inability to ambulate effectively includes the need to use crutches or other support on both sides, and, as the medical records show, claimant's right ankle fracture has sufficiently healed for her to be cleared for exercise.  There is no medical record evidence that she cannot ambulate effectively to meet Listing 1.02A.

Listing 1.00Q states:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q.

4

1  In this case, the ALJ did consider the effects of claimant's obesity and other impairments

2  cumulatively, but also found that claimant's fractures and arthritis had healed by April 2017.  AR

3  14-15.  Thus, the ALJ's findings that claimant did not meet any of the listings are supported by

4  substantial evidence.

5  **C. RFC**

6  Claimant argues that the RFC to perform light work is not supported by the record

7  because the ALJ did not consider her full range of impairments.  Specifically, she faults the ALJ

8  for discounting her testimony and contends that the ALJ's finding that she can stand and walk for

9  6 hours out of an 8-hour day is unsupported by the medical evidence.[2]

10  A claimant's RFC is what she can still do despite her physical, mental, and other

11  limitations.  *See Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001) (citing 20 C.F.R. pt. 404,

12  subpt. P, app. 2, 200.00(c)).  The ALJ's determination of a claimant's RFC must be based on the

13  medical opinions and the totality of the record.  *See* 20 C.F.R. §§ 416.927(b), 416.946(c).  In

14  determining an RFC, the ALJ is responsible for "determining credibility, resolving conflicts in

15  medical testimony, and for resolving ambiguities."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th

16  Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

17  As an initial matter, there is no medical opinion in the record that claimant cannot do light

18  work as stated in the RFC.  AR 17.  Claimant points to no medical evidence to the contrary.

19  Thus, the light work RFC is the most restrictive one that is supported by the medical evidence and

20  medical opinions in the record.

21  Claimant argues that her testimony shows that she cannot perform light work.  ECF No.

22  18 at ¶ 5.  However, "[a]n ALJ is not required to believe every allegation of disabling pain or

23  other non-exertional impairment."  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal

24  citations omitted).  An ALJ must engage in a two-step analysis to determine whether a claimant's

---

[2] Claimant also argues that it was error for the ALJ to rely upon the medical report from B. Foraker, AR 90-95, because it is unsigned. B. Foraker is not a physician, but rather a staff member who drafts reports for state agency doctors to review. Claimant cites to no authority requiring that such a report be signed. Additionally, the report contains electronic signatures. AR 94-95. Further, the ALJ does not rely on or cite to Foraker's report in the opinion. Thus, this argument is meritless.

1   testimony concerning subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d

2   995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented

3   objective medical evidence of an underlying impairment which could reasonably be expected to

4   produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "[T]he

5   claimant is not required to show her impairment could reasonably be expected to cause the

6   severity of the symptom she has alleged; she need only show that it could reasonably have caused

7   some degree of the symptom." *Id.* Second, if there is no evidence of malingering, the ALJ may

8   reject a claimant's testimony about the severity of the pain "only by offering specific, clear and

9   convincing reasons for doing so." *Id.* at 1015; *see also Trevizo v. Berryhill*, 871 F.3d 664, 679

10   (9th Cir. 2017) (reaffirming the application of the two-step analysis in *Garrison* after Social

11   Security Ruling 16-3p (2016)).

12      Factors that may be considered in assessing a claimant's subjective pain and symptom

13   testimony include the claimant's daily activities; the location, duration, intensity and frequency of

14   the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

15   effectiveness or side effects of any medication; other measures or treatment used for relief;

16   functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040

17   (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In assessing the

18   claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility

19   evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning

20   the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained

21   or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

22   and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

23   2008) (internal quotation marks and citations omitted).

24      Here, the ALJ followed the two-step analysis and found that claimant's "medically

25   determinable impairments could reasonably be expected to cause the alleged symptoms," but that

26   her statements about "the intensity, persistence and limiting effects of these symptoms are not

27   entirely consistent" with the record. AR 16. The ALJ found that plaintiff satisfied the first part

28   because her subjective allegations are consistent with the record to a degree. However, plaintiff

1  testified that she was told to elevate her leg and not exercise by Dr. Matkovic, and this, the ALJ

2  found, conflicted with treatment notes.  AR 15-16.  Further, the ALJ considered medical opinion

3  evidence and afforded claimant the most restrictive RFC in those medical opinions—that of light

4  work.  The ALJ offered "specific, clear and convincing reasons" for partially discounting

5  claimant's statements about the limiting effects of her symptoms.  *Garrison*, 759 F.3d at 1015.

6  Thus, the ALJ's findings pass muster.

7      **D.  VE Testimony**

8      Claimant argues that the hypotheticals posed by the ALJ did not fairly or accurately

9  describe her symptoms and limitations.  ECF No. 18 at ¶¶ 6, 11.  The ALJ determined what types

10  of jobs claimant could perform notwithstanding her limitations and whether those kinds of jobs

11  "exist in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(1),

12  416.960(c)(1).  For guidance on these questions, ALJs often ask VEs to provide impartial expert

13  testimony.  *See* §§ 404.1566(e), 416.966(e).

14      At claimant's hearing, the ALJ asked a VE whether jobs exist in the national economy for

15  an individual with the claimant's age, education, work experience, and residual functional

16  capacity.  As explained above, the RFC is supported by substantial evidence.  Further, there was

17  no variation between the RFC found in the ALJ's opinion and the RFC presented to the VE.

18  Compare AR 15 (ALJ opinion stating claimant's RFC) with AR 55-56 (presenting hypotheticals

19  for a person with claimant's RFC to the VE).  Therefore, the ALJ's hypotheticals were properly

20  framed and relied upon.  Claimant's final claim for reversal of the ALJ's decision must fail as

21  well.

22  **ORDER**

23      The clerk of court is directed to assign this case to a district judge, who will preside over

24  this case.  I will remain as the magistrate judge assigned to the case.

25  **FINDINGS AND RECOMMENDATIONS**

26      I recommend that:

27      1.  Claimant Ruth Gonzalez's appeal from the administrative decision of the

28          Commissioner of Social Security be denied;

7

2.   The decision of the Commissioner of Social Security be affirmed;

3.   Judgment be entered in favor of defendant; and

4.   That this case be closed.

I submit these findings and recommendations to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304.  Within thirty days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties.  The document containing the objections must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:    September 28, 2020

UNITED STATES MAGISTRATE JUDGE

No. 204.

8